[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11043

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIUS RENDER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cr-00058-TES-CHW-1

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Demetrius Render was sentenced to 36 months in prison after pleading guilty to the unlawful use of a communication facility to facilitate the commission of a felony. In this appeal, Render argues that his sentence was substantively unreasonable because it exceeded the six-to-twelve-month sentence recommended by the guidelines. Because the district court did not abuse its discretion in varying upward as it did, Render's sentence is not unreasonable, and we affirm.

## I.    Background

### A.  The Arrest

According to the stipulated facts in the plea agreement, a police officer pulled Render over for speeding in 2020. Approaching the car, the officer could smell marijuana. The officer asked to see Render's identification. "While apparently searching for his identification card, Render started to produce wads of cash from the pocket of his door" and "his pocket, and shove it at his female passenger," Randi Johnson, who "stuffed it in a backpack on the passenger floorboard."

The officer told Render to step out of the car multiple times. When Render finally did, the officer informed him that he would be detained for failing to produce identification and because the car

smelled like marijuana. Render gave the officer a false name, age, and driver's license state.

The police later searched Render's car. They found several drugs and drug paraphernalia, including: a bag of marijuana, a box of sandwich bags, a Xanax pill, a pill bottle containing nine Percocet pills, and a digital scale. They also found a loaded gun and $1,235 in cash, "at least part of which belonged to Render."[1]

At the Byron Police Department, a fingerprint test confirmed Render's identity and revealed that he was a felon with a suspended driver's license. He was arrested for possession of a firearm by a convicted felon; possession of a firearm during certain crimes; possession with intent to distribute a controlled substance; illegal possession of a controlled substance; and giving false information to a law enforcement officer.

### B. The Charges

Render was initially charged with one count of possession of a firearm by a convicted felon. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). He pleaded not guilty. While he was out on bond, Render tested positive for marijuana and methamphetamine.

The government later charged Render with one count of an unlawful use of a communication facility to facilitate the commission of a felony, 28 U.S.C. § 846, namely, "conspiracy to possess with intent to distribute and to distribute controlled

---

[1] The police found two other firearms in the car, but Johnson claimed they were hers.

substances, [28 U.S.C. §§ 813, 841 (a)(1), and 841(b)(1)(C),] all in violation" of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

Render agreed to plead guilty to the communications charge in exchange for dismissing the felon-in-possession indictment. As part of the stipulations in the plea agreement, Render admitted "that . . . he was engaged in a conspiracy . . . to distribute controlled substances" and that "he . . . knowingly and intentionally use[d] a communications device . . . to facilitate the commission of" the conspiracy. The agreement noted that Render faced a maximum sentence of four years in prison.[2]

### C.  The PSI

The presentence investigation report ("PSI") concluded Render's offense level was six. Render scored a criminal history category IV. The guidelines range was six to twelve months' imprisonment, with a statutory maximum penalty of forty-eight months. *See* 21 U.S.C. § 843(d)(1).

The PSI noted several factors that might warrant an upward departure or variance from the guidelines. First, "[t]he guideline range account[ed] for [Render's] possession of dangerous weapons (firearms) during the offense," but did not consider "the *number* of firearms possessed" because "only one firearm is required to trigger the preceding enhancement." Second, Render faced significantly less time because the plea bargain secured the dismissal of the

---

[2] The plea agreement also contained a sentence appeal waiver, but it permitted Render to appeal a sentence in excess of the advisory guidelines range.

felon-in-possession charge.  Third, Render possessed a firearm "in connection with another felony[.]"  And fourth, Render had "prior convictions for a controlled substance offense and crime of violence."[3]  In sum, the probation office indicated that, "[d]espite numerous probation and diversion options afforded to him, Render ha[d] repeatedly shown ineffective management of his behavior."

Render submitted no objections to the PSI.

### D.  Sentencing

Prior to sentencing, Render submitted character references and a brief sentencing memorandum, asking for a sentence that

---

[3] The PSI recounted several such state convictions:

- a 2011 conviction for possession of marijuana with intent to distribute;

- a 2016 simple battery conviction for which he received 12 months' probation;

- a 2017 conviction for possession of less than an ounce of marijuana for which he paid a fine;

- a 2020 conviction for simple battery (family violence) for which he received 12 months' probation;

- a 2012 conviction for aggravated assault, for which Render was sentenced to ten years in prison, four to serve, and the remainder on probation, which was revoked four times.

And, though it was not a drug or violent crime, the PSI also noted a 2019 conviction for possession of a firearm as a felon, for which Render served 24 days confinement.

was "sufficient, but not greater than necessary" under the sentencing factors in 18 U.S.C. § 3553(a).  Among other things, the letters explained that Render cared for his sick mother before she died, that he had stable employment at Walgreens, and that he had successfully obtained his G.E.D.

At the sentencing hearing, the parties agreed that the probation office had correctly calculated the guideline range, and confirmed that there were no objections, so the district court adopted the PSI's findings.  The government asked the district court to "consider an upward departure and upward variance" of 24 months' imprisonment based on the offense conduct (notably including the possession of drugs and a firearm), Render's "significant" criminal history, a positive test for methamphetamine while on pretrial release, and the fact that Render "is prone to the unlawful carrying of firearms . . . [as] a felon."  Render, in turn, told the court that he had "changed drastically" and had been working, going to school, and providing for his children.  He also insisted that much of his criminal history occurred when he was young.  So Render proposed an "alternative sentence" of community confinement, home detention, or intermittent confinement.

The district court saw things differently.  "[W]hat I hear you saying is you want another chance," the court told Render.  But "[y]ou've had a bunch of chances" and "you've wasted them . . . that's the only honest answer that there is."  "This is the second time you've been caught with guns."  "[Y]ou are not getting it . . . . The system has bent over backwards for you. You rarely get any

punishment." Finally, the district court told Render that it was "shocked" that Render's lawyer managed to secure a plea agreement for *just* the use of a communications facility, since the gun charge "would have been 100 to 120 months . . . minimum." "Everybody in your situation gets 8 or 9 years. Everybody . . . . You have gotten such a break."

So the district court announced that it would vary upward from the guidelines. The court explained that it had "considered the advisory sentencing range and the sentencing factors found at 18 U.S.C. § 3553(a)," and, based on "an individualized assessment of the facts presented," found that "the advisory guideline range [was] insufficient[.]" Six to twelve months was "insufficient to achieve the sentencing factors of adequately reflecting [Render's] history and characteristics, promoting respect for the law, affording adequate deterrence to criminal conduct, and protecting the public from further crimes that [he] may commit[.]" The district court then sentenced Render to 36 months' imprisonment, followed by a year of supervised release. Render appealed.

## II.    Standard of Review

We review the substantive reasonableness of a sentence only for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its sentencing discretion if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir.

2010) (en banc) (quotations omitted). The defendant bears the burden of showing that the sentence is unreasonable in light of the record, the sentencing factors listed in 18 U.S.C. § 3553(a), and "the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

We will vacate a district court's sentence "only if we are left with the 'definite and firm' conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that is outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (quoting *Irey*, 612 F.3d at 1190). Thus, "there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call." *Irey*, 612 F.3d at 1189.

## III.    Discussion

Render argues that his sentence is substantively unreasonable because (1) the district court based its decision to vary upward on factors already considered in his guidelines range, and (2) the district court gave especially great weight to the criminal history factor. We reject both arguments.

"A district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quotations omitted). The "overarching" instruction to sentencing courts in 18 U.S.C. § 3553 is that any sentence, within the guideline range or not, must be sufficient but

not greater than necessary to comply with the goals of sentencing listed in § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (discussing 18 U.S.C. § 3553(a)); *Gall*, 552 U.S. at 51 (stating that whether a sentence falls inside or outside the guideline range, the district court must consider the § 3553(a) factors).

The relevant factors under § 3553(a) include, for example, "the nature and circumstances of the offense," the personal "history and characteristics of the defendant," "the seriousness of the offense," and "the need for the sentence imposed . . . to promote respect for the law," provide "just punishment," and afford "adequate deterrence[.]" 18 U.S.C. § 3553(a)(1)–(2). The district court does not have to give all the factors equal weight, and the court has discretion to attach great weight to one factor over another. *Rosales-Bruno*, 789 F.3d at 1254. "[N]or must it discuss each [§ 3553(a)] factor and the role that it played in sentencing." *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007). And the mere fact that the court does not discuss mitigating evidence does not indicate "that the court erroneously ignored or failed to consider this evidence[.]" *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (quotations omitted).

The court must also consider the applicable guidelines range, any pertinent policy statements from the Sentencing Commission, and the need to avoid unwarranted sentencing disparities, as well as the ability to provide restitution to any of the defendant's victims. 18 U.S.C. § 3553(a)(3)–(7). "We do not presume that a sentence outside the guideline range is

unreasonable," and we "must give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance." *Goldman*, 953 F.3d at 1222.

We see nothing unreasonable about Render's sentence. The district court considered the § 3553(a) factors. It announced that the guidelines range was "insufficient to achieve the sentencing factors of adequately reflecting [Render's] history and characteristics, promoting respect for the law, affording adequate deterrence to criminal conduct, and protecting the public from further crimes that [he] may commit[.]" It explained that Render had a long criminal history and had not (in the district court's view) reformed his behavior. *See United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) ("The court may . . . impose an upward variance if it concludes that the Guidelines range was insufficient in light of a defendant's criminal history."). And it added that Render got a significant benefit from plea bargaining down from more serious charges. These conclusions are supported by the record.

Render makes (essentially) two counterarguments, and we reject them both.[4]    First, he contends that the district court

---

[4] Render also briefly analyzes how his arguments would fare under the plain-error standard. But because Render proposed that a shorter sentence would be sufficient, he preserved the substantive reasonableness issue for our review. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 767 (2020) ("A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the

wrongfully based its decision to vary upward on factors already considered in his guidelines range. But "we have held that the district court *may* vary upward based on conduct that was already considered in calculating the guideline range." *Oudomsine*, 57 F.4th at 1268 (quotation and brackets omitted). Second, Render seems to suggest that the district court gave too much weight to the criminal history factor. But the weight given to the § 3553(a) factors is "committed to the sound discretion of the district court[.]" *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quotation omitted). The district court "is permitted to attach great weight to one factor over others[.]" *United States v. Overstreet*, 713 F.3d 627, 638 (11th Cir. 2013) (quotations omitted). We "will not second guess the weight given to a § 3553(a) factor so long as"—as we have already explained is true here—"the sentence is reasonable under the circumstances." *Butler*, 39 F.4th at 1355.

Thus, because we find nothing unreasonable in the sentence the district court chose, and Render's arguments are answered by well-settled principles, we conclude that Render's sentence is not substantively unreasonable.

---

substantive reasonableness of the sentence. He need not also refer to the standard of review.")

To the extent that Render argues that "[t]he district court . . . failed to take into consideration the steps to rehabilitation that Mr. Render had taken" under *either* standard of review, we reject that argument. *Amedeo*, 487 F.3d at 833 (failing to discuss mitigating evidence does not indicate "that the court erroneously ignored or failed to consider this evidence" (quotations omitted)).

### IV.    Conclusion

We therefore affirm the judgment of the district court.

**AFFIRMED.**